NAYLOR, *et al.*, v. F. L. BUTCHER, Appellant.

**Principal and Agent:** SPECIFIC PERFORMANCE.  A writing allowing
1 an agent to sell land upon stated terms is verbally accepted by
2 the buyer.  Before compliance with its terms, the authority of
3 the agent is revoked.  *Held,* specific performance should not be
decreed.

*Appeal from  Calhoun  District  Court.*—HON. CHARLES D. GOLDSMITH, Judge.

MONDAY, JANUARY 21, 1895.

Action in equity for specific performance.    Decree for plaintiffs.    Defendant appeals.—*Reversed.*

*M. W. Frick* and *Botsford, Healy & Healy* for appellants.

*Stevenson & Lavender* for appellee.

Kinne, J.—I. The following facts are either admitted or are established by the evidence: September 4, 1891, one Felts, a real estate broker, residing at Gowrie, Iowa, wrote to the defendant, who resided at Carthage, Missouri, asking for authority to sell defendant's land. The record does not disclose what, if any, answer Felts received to this letter. September 14, 1891, Felts wrote Butcher again and among other things said: "If you wish to have me to make a sale of it, you will write me, and give me the land for sale." September 21, 1891, defendant answered thus: "Yours received, and contents noted. In reply, say: You can have the land to sell for twenty-five dollars per acre, at two per cent., all cash, if possible; if not, half cash, and seven per cent. interest, and mortgage on the land until paid. Would like all cash, because I want to put the money into other property. Mr. Goodwin has a lease on the farm for two more years. You might see him and see if he would want anything to release it, if you should sell, or how much he would want to release it. Let me hear from you often, if there is any chance to sell." January 8, 1892, plaintiffs and Felts entered into the following contract: "Know all men by these presents, that F. L. Butcher, of Carthage and state of Missouri, in consideration of the sum of $6,000 to be paid by J. S. Naylor & J. W. Naylor, of the county of Boone, state of Iowa, do hereby agree to sell and convey unto the said J. S. Naylor & J. W. Naylor the following described premises, situated in the county of Calhoun and state of Iowa, to-wit,—$5.50 in hand paid, the receipt whereof is acknowledged: Northwest quarter

of section 21, and west half of northeast quarter of section 21, township 86, range 31 west, two hundred and forty acres, more or less, known as the 'F. L. Butcher Farm,' to be paid for as follows: $2,000 or more on the first day of March, 1892, and the remainder of the $6,000 in five years or before, at seven per cent., payable annually, secured by a mortgage on said land. And I hereby agree to furnish abstract of title, and make perfect title to said above-described, upon the payment of said above-described money, and the execution of notes and mortgage for the remainder of the $6,000. And the said above-described contract to be subject to the approval of F. L. Butcher." This contract seems to have been submitted to the defendant, accompanied with a letter from Felts, which is lost, but which, in substance, stated that he had a buyer for the farm if the terms he proposed were satisfactory; that the party would give twenty-five dollars per acre for the land, payable two thousand five hundred dollars cash, and the balance in a note secured by mortgage on the land, buyer to have five years to pay the balance of the purchase price, and same to bear seven per cent. interest from date, payable semi-annually, with privilege of paying one hundred dollars on principal at each interest pay day. He said, if this offer was satisfactory, to so write him, and he would make out and send the deed for execution and the mortgage for examination.

On January 17, 1892, defendant answered this letter, as follows: "Your letter received. In reply say I do not approve of all the contract you have made. I would much rather have half cash, but, if not, I will take the two thousand and five hundred; that is the least I can take. I will pay Mr. Goodwin for the wire whatever is right, but will expect the men that buy the land to pay for the plowing. I am willing to give them the privilege of paying $500 at any time the interest is

due, but not such small payments as $100. I want to put my money in land, and cannot use such small payments as $100. I am also willing to give them five years to finish paying for the land. I suppose you know there is $1,000 in the Fidelity Loan & Trust Co.; they hold the abstract. All is clear except that. If this is suitable to the parties, fill out a mortgage contract and mortgage, and send down for me to look over; also a blank warranty deed." January 25, 1892, plaintiff J. W. Naylor went to Gowrie, and verbally accepted the terms stated in the foregoing letter. About January 29, 1892, Felts went to Illinois, and did not return until about February 10, 1892. Just before leaving, Felts wrote plaintiffs: "I will let you know when I will be back, and I must make out the papers, and get the matter about that land sale finished up. You can depend on me doing all for you that Mr. Butcher will allow me to. You will have to pay Mr. Goodwin something to leave the place, and I want to make it satisfactory all around, as much as I can." February 8, 1892, Felts wrote plaintiffs: "I have been detained here longer than I expected, but will get home this week, and get our business in shape as soon as possible." On the same day he wrote defendant: "I was called over home to attend my father through his last sickness and death, and did not get the papers made out before I left Iowa, but I will be back again in a few days, and everything will be all right, I think, except getting Goodwin off the place. I am afraid we will have trouble about that. I will go back to Iowa this week, and get everything in shape at once, as far as possible." February 14, 1892, defendant replied to Felts' letter as follows: "I am just in rec. of yours of the 8th. In reply, say the information contained in your letter comes too late. I need not tell you that if you could not have attended to this business

in time you should have left some one to have done so for you. Life is short, and I cannot blame Mr. G. if he does not want to surrender his lease. At this time my opportunity has passed also, and now I do not care to sell the place at all, as I have arranged to tile the east 80, and also contracted to break it up. Should I want to sell it, will let you know; but until I do so you will understand that the land is out of market, and withdrawn from sale from all agents, including yourself." This letter was received by Felts on February 18, 1892. On February 15, 1892, Felts wrote Butcher as follows: "I will make out the deeds to the man that I sold your farm to, and make out the mortgage and notes to you, according to your instructions, and send you to have you examine the mortgage and acknowledge the deeds. We will do all the business at E. A. Lynd's Bank of Gowrie, so everything will be safe and correct. When you acknowledge the deeds, send them to E. A. Lynd's Bank in a registered letter. We will have to make an abstract to them, and I am a little afraid we will have trouble to get Mr. Goodwin off the place. I will go out and see him in a day or two. He told me if you sold the farm he would leave, if you would pay him for that fencing and plowing, and he told the men that bought the place the same thing. But one of his neighbors told me he would not leave unless he got $150 to $200. I will see him soon, and find out just what we can do." On the same day Felts also wrote Butcher: "Inclosed find blank deeds to be acknowledged and returned, also blank mortgage to be examined. Return all papers in a registered letter to E. A. Lynd's Bank of Gowrie, where the money will be in deposit, and the notes and mortgage will be filled out and deposited for you." On the other side of this letter was written: "If the mortgage should not suit you, you can make another, containing the same conditions." On the twentieth of Feb-

ruary Felts again wrote defendant that he had sent him deeds and mortgage, and said: "If you want any change made, instruct the bank how you want the business done, and we will have it done just to suit, if possible." February 26, 1892, Felts wrote Butcher, expressing surprise at the contents of Butcher's letters, and urging him to make the deeds. From this correspondence, and from other testimony, some of which will be hereinafter noticed, plaintiffs claim that defendant, through Felts, entered into a contract with them for the sale of the land, and that a part of the purchase price was paid, and they seek a specific performance of the contract. Defendant denies making any contract, says Felts' authority was revoked, and, if any sale was made by him, it was after the revocation of his said authority. The court below entered a decree for plaintiffs.

II.    Counsel discuss at length the question as to whether the contract, if any, for the sale of the land was within the statute of frauds. The disposition we shall make of the case renders it unnecessary for us to determine that question. We place our decision of this case upon the broad ground that it has not been shown that any contract was ever entered into between plaintiffs and defendant for the sale of this land to plaintiffs. It is clear that the written agreement entered into between plaintiffs and Felts never became binding upon defendant, because it was not in some of its provisions in accordance with the authority given to Felts; and also from the fact that by the express terms of that agreement it was to be subject to Butcher's approval, and was in fact never approved by him. It is claimed, however, that the proposition in Butcher's letter, of date of January 17, 1892, was accepted by plaintiffs, and hence a contract completed. By that letter, among other things, the purchaser was required to pay Goodwin, the tenant, for the plowing,

was to pay Butcher two thousand five hundred dollars cash, and we think that the letter reserved to Butcher the right of examination of the papers and approval of the sale. All of the circumstances surrounding the transaction show that such is the proper construction to be placed upon the letter. Butcher had the land leased for two years to Goodwin, and the former could not make any disposition of the land by way of sale which would affect the tenant's right of possession, without the latter's consent. Being bound by his lease to Goodwin, Butcher did not propose to sell unless the purchaser made satisfactory arrangements with his tenant as to the plowing. Butcher never approved the sale as claimed by plaintiffs to have been made, and it does not appear that plaintiffs at any time settled with Goodwin for the plowing, nor was the two thousand five hundred dollars cash payment for the land made. It cannot be said that a mere verbal agreement by plaintiffs to accept Butcher's proposition, and which was never carried out or performed by plaintiffs, created a valid and enforceable contract. Plaintiffs failed to do those things required of them to render Butcher's proposition of sale binding upon him. Nor are they in any position to ask a decree for specific performance on part of Butcher, when they did not, during the life of Felt's agency, perform their part of the agreement. The agreement in writing between Felts and plaintiffs, never having met with Butcher's approval, did not become effective as a contract. The evidence does not show that, by agreement of parties or otherwise, that written agreement was made the basis of or a part of any subsequent contract. The plain facts are these: Butcher disapproved of the written contract which Felts entered into on his behalf, and by letter submitted the conditions upon which he would sell the land, with the instructions that if his

terms were acceptable to make out and send him the papers for examination and approval. When Butcher's terms were made known to plaintiffs, they verbally agreed to accept the same, but never followed up their promise by a compliance with his terms. Prior to the revocation of Felts' authority, plaintiffs had not settled with the tenant for the plowing; they did not make the cash payment, but, after Butcher had revoked Felts' agency plaintiffs paid the two thousand five hundred dollars in to a bank at Gowrie, and proposed to take the land, and run their chances of settling with the tenant. Butcher had the right, at any time before his agent had consummated a contract for the sale of the land, to withdraw his authority, and that is just what he did do in this case. Having failed to comply with the propositions of Butcher while the agency existed, plaintiffs have no ground for complaint, nor are they in a position to obtain a decree for specific performance. Our view of the case renders it unnecessary to consider many other points discussed by counsel.—*Reversed.*